## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Cynthia Ann Russo-Chestnut, aka Cynthia | ) | Case No.  13-07133-JW |
| Ann Crawford, aka Cynthia Ann Russo, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| Cynthia Ann Russo-Chestnut, aka Cynthia | ) | |
| Ann Crawford, aka Cynthia Ann Russo, | ) | |
| | ) | Adversary Case No. 14-80064-JW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION TO DISMISS IN PART AND** |
| | ) | **DENYING IN PART** |
| Wells Fargo Home Mortgage, Wells Fargo | ) | |
| Bank, N.A., HSBC Bank USA National | ) | |
| Association, Wells Fargo Asset Securities | ) | |
| Corporation, Mortgage Pass-Through | ) | |
| Certificates, Series 2007-10 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on a Motion to Dismiss ("Motion") filed by the Defendants Wells Fargo Bank, N.A.[1] and HSBC Bank, USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-10[2] ("Defendants").

Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which applies to this adversary proceeding under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

---

[1] Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

[2] This Defendant is improperly identified in the caption as "HSBC Bank USA National Association, Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-10."

After hearing arguments of the parties and reviewing the pleadings and record in this action, the Court grants the Motion to Dismiss in part and denies it in part. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[3]

## FINDINGS OF FACT

1.      On February 1, 2007, Cynthia Ann Russo-Chestnut, a/k/a Cynthia Ann Crawford, a/k/a Cynthia Ann Russo ("Debtor"), executed a note and mortgage for the principal sum of $531,300.00 in favor of Defendants' predecessor in interest to finance the purchase of property located at 1070 Folly Road, Myrtle Beach, South Carolina ("the Property"). The mortgage was recorded on February 7, 2007, in the Register of Deeds Office for Horry County, and was subsequently assigned to Defendants.

2.      On March 9, 2009, Defendants initiated foreclosure proceedings against Debtor in state court, Horry County Case No. 2009-CP-26-2299. On December 13, 2012, Debtor filed an Answer and Counterclaim, asserting the following counterclaims: (1) Negligent Misrepresentation; (2) Violation of South Carolina Unfair Trade Practices Act; (3) Misrepresentation and/or Fraud; (4) Third-Party Breach of Contract; (5) Breach of Contract Accompanied by Violation of the Covenant of Good Faith and Fair Dealing; and (6) Promissory Estoppel (collectively "Foreclosure Counterclaims"). The Foreclosure Counterclaims all appear to arise out of Defendants' conduct in connection with the negotiation and consideration of a modification of Debtor's mortgage in 2010.

3.      Defendants filed a Motion for Summary Judgment as to all Foreclosure Counterclaims on May 22, 2013. Subsequently, the Court of Common Pleas granted

---

[3] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

2

Defendants' Motion for Summary judgment on all Foreclosure Counterclaims, and entered an Order Granting Summary Judgment on October 8, 2013, dismissing Debtor's Foreclosure Counterclaims with prejudice. Debtor argues that the Order Granting Summary Judgment was based upon facts deemed admitted as a result of Debtor's failure to timely respond to Defendants' Requests for Admissions. While the Court takes judicial notice of the entry of the Order Granting Summary Judgment on October 8, 2013, a copy of this Order was not presented to this Court.

4.    On November 4, 2013, Debtor filed a Motion for Reconsideration of the Order Granting Summary Judgment. On November 8, 2013, Debtor also filed an Appeal to the South Carolina Court of Appeals. On February 11, 2014, the South Carolina Court of Appeals issued an Order dismissing the appeal based upon Debtor's failure to file the initial brief and designation of matter as required by the South Carolina Appellate Court Rules, thereby making the order final.

5.    Debtor filed her Chapter 13 bankruptcy case on November 29, 2013. Debtor scheduled Defendants as a secured creditor with a lien on the Property.

6.    On December 13, 2013, Debtor filed her initial Chapter 13 Plan, using the form Chapter 13 plan required in this District.[4] The initial plan asserted that Debtor was current on obligations to Defendants and proposed to continue making regular payments.

7.    Defendants objected to confirmation of the initial Chapter 13 Plan on January 3, 2014, on the basis that "Debtor provides no information as to how she intends to cure Wells Fargo's pre-petition arrearage" in the amount of $239,400.00.

---

[4] See SC LBR 3015-1 (requiring a chapter 13 debtor in this District to use the form plan or file a plan in substantial conformance with the form plan).

8.      Debtor amended her Chapter 13 Plan on February 11, 2014 and again on February 18, 2014.  The February 11, 2014 plan did not provide for treatment of Defendants' claim as to the Property.[5]  The February 18, 2014 plan provided for the curing of the arrearage owed to Defendants through payments of $4,000.00 or more per month, along with 5.25% interest, and the maintenance of regular non-arrearage payments beginning March, 2014.  Both plans used the form Chapter 13 plan required in this District.

9.      A confirmation hearing was held on February 20, 2014, during which the Trustee and Defendants expressed concerns about the feasibility of Debtor's proposed Plan.   At the hearing, Debtor testified that she had previously pursued mortgage modification with Defendants and had made trial period payments but the modification was not completed.  Debtor testified that Defendants told her they were unable to complete the modification because her loan was not eligible as a mortgage-backed security.  Debtor indicated her continued interest in pursuing a modification of her mortgage.  Upon inquiry from the Court, Defendants' counsel advised that he would check with his client regarding the loan modification and report to Debtor's counsel, but he did not think a loan modification at this point was likely in light of the significant arrearage of over $247,000 owed to Defendants.  The confirmation hearing was continued to provide Debtor with an opportunity to demonstrate feasibility.

10.     Debtor amended her Chapter 13 Plan again on March 14, 2014 ("Final Amended Plan").  The Final Amended Plan provides for the curing of default on Defendants' loan as follows:

        a.   Arrearage payments. The trustee shall pay the arrearage as stated in the creditor's allowed claim or as otherwise ordered by the Court to **Wells Fargo Bank, N.A.** at the rate of $**4,050.00** or more per month*,* for **1070 Folly Road, Myrtle Beach, SC**, along with **0**% interest. The creditor shall apply trustee payments solely to

_____

[5] Paragraph 4(b)(2) provided that Debtor is current on obligations to Wells Fargo, but the collateral was described as "Rental Home, 201 Westfield Drive, Myrtle Beach, SC 29579."

those designated arrearages, i.e., those arrearages accruing before the month specified in (b) below. For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.

b. Maintenance of regular non-arrearage payments. Beginning (month and year) the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor. The creditor shall apply each payment under this paragraph solely to post-petition obligations that accrue during or after the month specified herein.

11.     Like the earlier plans proposed by Debtor, the Final Amended Plan also uses the form plan language in this District, which includes the following provisions that are relevant to this matter:

**IV. PLAN DISTRIBUTIONS TO CREDITORS**….Confirmation of this plan does not bar a party in interest from objecting to a claim….

B. Secured Creditor Claim: The Plan treats secured claims as follows:

1. General Provisions:  The terms of the debtors pre-petition agreement with a secured creditor shall continue to apply except as modified by this plan, the order confirming the plan, or other order of the Court. Holders of secured claims shall retain liens to the extent provided by 11 U.S.C. § 1325(a)(5)(B)(i)….

**V. PROPERTY OF THE ESTATE, STATUS AND OBLIGATIONS OF THE DEBTOR AFTER CONFIRMATION:** ... Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor.

12.     Prior to the continued confirmation hearing, Defendants filed a notification of Settlement of their Objection to Confirmation on March 14, 2014.

13.     The continued confirmation hearing was held on March 18, 2014, and the Trustee recommended confirmation.

14.     On March 20, 2014, Defendants filed a secured proof of claim based on Debtor's note and mortgage.  The proof of claim reflected a $246,446.10 arrearage balance that Debtor

owed as of the petition date and a secured claim of $738,919.53. As of the date of the hearing, Debtor has not filed a separate objection to the proof of claim.

15.    The Court confirmed Debtor's Final Amended Plan by Order entered on April 17, 2014.

16.    On June 11, 2014, Debtor commenced this adversary proceeding by filing a Complaint against Defendants. The Complaint, which includes causes of action for violation of the South Carolina Unfair Trade Practices Act, negligence, breach of contract, specific performance, and promissory estoppel, seeks monetary damages for the pre-petition and thus pre-confirmation conduct of Defendants in association with its failure to modify Debtor's loan in 2010.

17.    On July 25, 2014, Defendants filed the Motion to Dismiss the Adversary Proceeding. In the Motion, Defendants argue that the Complaint should be dismissed because it generally fails to state a plausible claim for relief since it contains only vague and conclusory allegations, the claim for violation of the South Carolina Unfair Trade Practices Act fails because the Act does not apply to Defendants as federally-insured financial institutions and the allegations are vague and conclusory, the claims are barred by the *res judicata* effect of the confirmed plan pursuant to 11 U.S.C. § 1327, the claims are barred by judicial estoppel, and the claims are barred by equitable estoppel.

18.    On August 25, 2014, Debtor filed an objection to the Motion and a hearing was held on September 3, 2014. Debtor asserts that 11 U.S.C. § 1327 does not apply to bar her claims because the confirmed plan reserves her rights to assert those claims and *res judicata* does not apply due to the entry of the prior state court order because the order was based upon deemed admissions and thus was not a decision on the merits. Otherwise, Debtor does not respond to

6

Defendants' arguments that the allegations of the Complaint are vague and conclusory, nor does she request an opportunity to amend.  At the hearing on the Motion, in response to Debtor's argument regarding the application of *res judicata,* Defendants additionally argued that the claims are barred by *res judicata* due the entry of the prior final state court order, the appeal of which was dismissed due to Debtor's failure to prosecute.

19.    On September 2, 2014, Defendants filed a Motion for Relief from Stay, requesting relief from the automatic stay under 11 U.S.C. § 362(d) based upon Debtor's alleged failure to make post-petition non-arrearage payments to Defendants.  Debtor has filed an objection, and a hearing has been scheduled.

## CONCLUSIONS OF LAW

### I.    Rule 12(b)(6) Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), Debtor's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  A complaint fails to meet this standard where it offers "labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action" without "further factual enhancement." Id. at 1949.  To meet the plausibility standard, Debtor must plead factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. Id.  In determining the sufficiency of the complaint, the Court accepts all factual allegations in the complaint as true and considers the complaint in its entirety, including documents incorporated into the complaint by reference. Matrix Capital Management

Fund, LT v. Bearing Point, Inc., 576 F.3d 172, 176 (4th Cir. 2009) (citing Tellabs, Inc. v. Makor
Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## II.    Sufficiency of the Complaint as to South Carolina Unfair Trade Practices Act Claim

Defendants assert that Debtor's claim for violation of the South Carolina Unfair Trade
Practices Act (SCUTPA) fails to state a claim because (1) SCUTPA does not apply to federally-
insured financial institutions, and (2) Debtor's conclusory and formulaic recitation of the
elements of a SCUTPA claim fails to adequately allege a plausible claim for relief.  In support of
their argument that SCUTPA does not apply to federally-insured financial institutions,
Defendants cite the South Carolina circuit court decisions of JJH Transport, LLC v. Branch
Banking and Trust Company of South Carolina, 2006-CP-21-1814, and Branch Banking and
Trust Company of South Carolina v. Eartha Marshall, 2003-CP-40-3272, which are unpublished
opinions.  A copy of these decisions was not provided to the Court pursuant to SC LBR 9013-
2(a)(3), and therefore, the Court is unable to verify that these decisions support Defendants'
argument regarding the applicability to SCUTPA to Defendants.

Nevertheless, after reviewing the Complaint with regard to the SCUTPA cause of action,
the Court finds that the pleading does not meet the requirements of Fed. R. Civ. P. 8, as it is
woefully devoid of factual allegations demonstrating the elements of a cause of action for
violation of the SCUTPA—it merely sets forth conclusory allegations which do not give
Defendants fair notice of the grounds upon which Debtor's claim rests. See Fed. R. Civ. P. 8
(requiring a short and plain statement of the claim showing the pleader is entitled to relief in
order to give the defendant fair notice of what the claim is and the grounds upon which it rests);
Ashcroft v. Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice.").   "To recover in an action under

[SCUPTA], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive acts." Wright v. Craft, 640 S.E.2d. 486, 498 (S.C. Ct. App. 2006). The Complaint merely alleges that Plaintiff negotiated a mortgage loan modification with Defendants and that Defendants thereafter refused to comply with its terms by claiming Plaintiff was not eligible; that Defendants "engaged in acts which constitute willful violation of state negligence law and [SCUTPA]"; that "Defendants violation of the Bankruptcy Code, State Negligence law, State Unfair and Deceptive Practices Act law renders it liable;" that such "violation is capable of repetition since Defendants service and or owns thousands of mortgages in South Carolina;" and that this conduct violates SCUTPA and Plaintiff is entitled to recover "treble damages plus attorney fees." These vague and conclusory allegations fail to state a claim for violation of SCUTPA. Under South Carolina law, "even 'a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of [SCUTPA].'" Bahringer v. ADT Sec. Services, Inc., 942 F.Supp.2d 585 (D.S.C. 2013) (quoting Columbia E. Assoc.. v. Bi-Lo, Inc., 386 S.E.2d 259, 263 (S.C. Ct. App. 1989)). Even assuming Debtor has adequately alleged a breach of a loan modification agreement, there are no allegations of specific acts of Defendants that are offensive to public policy or immoral, unethical, oppressive, or that have the tendency to deceive. See id. The Complaint thus fails to provide adequate factual enhancement to state a claim for violation of SCUTPA. Accordingly, Defendants' motion to dismiss this claim is granted.

### III.    Sufficiency of Complaint as to other Claims

In the Motion, Defendants further state that "Defendants are entitled to dismissal because Debtor has failed to state a claim upon which relief can be granted as a matter of law."  In considering the Motion, the Court has examined the remaining four enumerated causes of action for Negligence, Breach of Contract, Specific Performance, and Promissory Estoppel and finds that the Complaint also does not meet the requirements of Fed. R. Civ. P. 8 as to the Negligence, Specific Performance, and Promissory Estoppel causes of action.  Each of these causes of action contain only broad, vague, and conclusory allegations, which do not give Defendants fair notice of the grounds upon which Debtor's claims rest.[6]  See Fed. R. Civ. P. 8; Ashcroft v. Iqbal, 129 S.Ct. at 1949 (stating that mere conclusory statements do not suffice for purposes of Fed. R. Civ. P. 8 pleading).  Debtor's Negligence claim also fails to state a claim because it is devoid of any allegation of the existence and delineation of a duty owed by Defendants to Debtor.  Debtor's Specific Performance and Promissory Estoppel causes of action merely recite the elements of the cause of action without providing any factual enhancement.   Accordingly, the Defendants' Motion to Dismiss is granted as to the Negligence, Specific Performance, and Promissory Estoppel claims, and these claims are dismissed.

Accepting all the allegations of the Breach of Contract claim as true, the Court finds that Debtor adequately alleges a plausible claim for breach of contract if the Complaint is viewed in the light most favorable to Debtor. The Motion is thus denied as to the Breach of Contract claim.

---

[6] The Court notes that counsel for Debtor has filed complaints in other cases in this Court using a "shot-gun" approach that requires the Court to divine a viable claim out of the wide range of claims asserted, and cautions that the use of such pleadings is not acceptable in this Court and may violate Fed. R. Bankr. P. 9011(b) and result in sanctions pursuant to Fed. R. Bankr. P. 9011(c).

**IV.     11 U.S.C. § 1327(a) and the *Res Judicata* effect of the confirmed plan**

Defendants further assert that Debtor's claims are barred pursuant to 11 U.S.C. §1327(a)[7]

and the *res judicata* effect of the confirmed plan, because the Plan recognized Defendants' lien

and provided for payment via 11 U.S.C. § 1322(a)(5).   A confirmation order is generally

afforded a preclusive effect due to a strong policy favoring finality of a confirmed chapter 13

plan.  See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269 (2010) (recognizing the

finality of an order confirming plan); In re Durham, 260 B.R. 383, 386 (Bankr. D.S.C. 2001)

(same).  Section 1327(a) provides: "[t]he provisions of a confirmed plan bind the debtor and each

creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not

such creditor has objected to, has accepted, or has rejected the plan."   Accordingly, parties

ordinarily "may be precluded from raising claims or issues that they could have or should have

raised before confirmation of a bankruptcy plan, but failed to do so."  In re Varat Enters., Inc., 81

F.3d 1310, 1314-15 (4th Cir. 1996) (citing Turshen v. Chapman, 823 F.2d 836, 839 (4th Cir.

1987)).  A bankruptcy court's order of confirmation "is treated as a final judgment with *res*

*judicata* effect."  Id. at 1315 (citing Stoll v. Gottlieb, 305 U.S. 165, 170-71 (1938); In re Linkous,

990 F.2d 160, 162 (4th Cir. 1983)).  *Res judicata* is comprised of two concepts: claim preclusion

and  issue  preclusion,  or  collateral  estoppel.   At  issue  in  this  case  are  the  rules  of  claim

preclusion, which provide that "if later litigation arises from the same cause of action as the first,

then the judgment bars litigation not only of every matter actually adjudicated in the earlier case,

but also of every claim that might have been presented." Id.  Claim preclusion generally occurs

when the following elements are satisfied: "1) the prior judgment was final and on the merits,

and rendered by a court of competent jurisdiction in accordance with the requirements of due

---

[7] Further references to the Bankruptcy Code shall be by section number only.

process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." Id.

Although the first two elements may be satisfied in this case, the claims set forth in the Complaint were not adjudicated by the confirmed plan because Debtor's rights to later bring those claims were expressly reserved through the Reservation Language in the confirmed plan. The *res judicata* effect of a confirmed plan is limited by the language of the plan. See In re Hazelwood, 513 B.R. 323, 330-31 (Bankr. W.D. Ky. 2014) (finding that the *res judicata* effects of a confirmation order may be avoided when the plan of reorganization expressly reserves the rights to litigate certain claims).[8]  The debtor's inclusion of an express provision reserving her right to bring avoidance actions in the confirmed plan has been found sufficient to allow her to bring a post-confirmation proceeding to avoid a mortgage lien, despite general principles of claim preclusion or the *res judicata* effect of the confirmed plan.  In re Hearn, 337 B.R. 603, 609 (Bankr. E.D.Mich 2006). In Hearn, the court held that the creditor itself was bound to the reservation of rights provision pursuant to § 1327, as part of the confirmed plan. Id.

At the hearing, Debtor argued that the reservation of rights language ("Reservation Language") in the confirmed plan preserved her rights to bring the claims set forth in the Complaint in this adversary proceeding.  Defendants argue that the general Reservation Language in Debtor's plan is not sufficient to avoid the *res judicata* effect of the confirmed plan, relying upon In re Nix, C/A No. 10-01103-HB, 2012 WL 27667 (Bankr. D.S.C. 2012). Therefore, integral to determining the *res judicata* effect of the Plan, the Court must determine the effectiveness of the Reservation Language in the form chapter 13 plan required in this district by Local Rule 3015-1.

---

[8] An exception to the *res judicata* effect of a confirmation order also exists where the creditor was denied due process for lack of notice. Durham, 260 B.R. at 387.  In this case, it appears that Defendants were properly served and were represented by counsel who appeared on their behalf; therefore, no due process issues are present.

In <u>Nix,</u> the debtor was pursuing several causes of action against her home mortgage creditor, including certain pre-confirmation claims arising out of the loan closing, through which she sought rescission of the transaction, damages, cancellation of the mortgage, and other relief. The creditor moved to dismiss the claims, arguing that the pre-confirmation claims were barred by *res judicata*, judicial estoppel, equitable estoppel, and waiver.   The debtor responded by arguing that the reservation of rights provisions in her confirmed plan specifically contemplated her ability to assert these causes of action post-confirmation.   The court found that the general reservation of rights clause in the plan was ineffective and adopted a specificity requirement applied in two Chapter 13 cases, <u>Hearn</u> and <u>Porter</u>, finding that a reservation of a claim must be expressly and specifically identified before it can overcome any *res judicata* effect of the confirmed plan.  <u>Id</u>. at *6 (citing <u>In re Porter</u>, 382 B.R. 29 (Bankr. D.Vt. 2008) and <u>In re Hearn</u>, 337 B.R. at 609).   The bankruptcy courts in <u>Hearn</u> and <u>Porter</u> had relied on Chapter 11 cases finding that general reservation of rights clauses are ineffective in Chapter 11 plans, concluding that the Chapter 11 approach was "persuasive by analogy" in Chapter 13 cases.   In connection with this ruling, the court determined: (1) that *res judicata* bars "pre-confirmation causes of action against a creditor or challenges to its claim that are contrary to the specific terms found in the confirmed plan or to its preclusive effect;" (2) that *res judicata* only permits "challenges to the allowance of the claim by applying the terms of the prepetition contract between the parties as modified by the plan;" and (3) that the *res judicata* effect of the confirmed plan would not allow any challenge that is contrary to matters finally determined in the case by confirmation, including the assertion of claims arising from pre-confirmation conduct or activity that could or should have been raised prior to confirmation.  <u>Id.</u> at *6-*7.

13

The same standard was also applied by Judge Burris in <u>Ginn v. CitiMortage, Inc. (In re Ginn)</u>, 465 B.R. 84, 91 (Bankr. D.S.C. 2012) and in <u>Pressley v. CitiMortgage (In re Pressley)</u>, No. 09-08825-HB, Adv. Pro. No. 11-80048-HB, 2012 WL 115379, at *4 (Bankr. D.S.C. Jan. 12, 2012).  In <u>Ginn</u>, the debtors sought relief in the form of actual, statutory and punitive damages, costs, and attorney's fees for breach of contract, failure to comply with the Home Affordable Modification Program and the Home Affordable Refinance Program, violations of SCUTPA and the South Carolina Consumer Protection Code.  The debtors also included in the Complaint their objection to the creditor's proof of claim based upon its lack of status as a "holder" and sought a determination of the secured status of the creditor.  The creditor argued that the debtors' pursuit of pre-confirmation causes of action was precluded by confirmation of the plan.  Like the debtor in <u>Nix</u>, the debtors in <u>Ginn</u> argued that the reservation of rights provisions in the confirmed plan specifically contemplated their ability to assert these causes of action post-confirmation.  Based on the reasoning set forth in <u>Nix</u>, Judge Burris held that the blanket reservation of rights in the Court's form chapter 13 plan, without more, is insufficient to defeat a creditor's assertion of *res judicata* as a defense to the debtors' causes of action arising from pre-confirmation activity.

The debtors in <u>Pressley</u> were also attempting to pursue causes of action based upon pre-confirmation activity against a creditor, which were nearly identical to those raised in <u>Ginn</u>, and also sought relief in the form of rescission of the lien, damages, setoff or recoupment, and costs and attorneys fees.  For the same reasons articulated in <u>Nix</u> and <u>Ginn</u>, Judge Burris granted the creditor's motion to dismiss as to the causes of action arising from pre-confirmation activity, again finding that the blanket reservation of rights in the form plan, without more, is insufficient to defeat a *res judicata* defense.

Initially, the Court observes that this case appears to be factually distinguishable from the case relied upon by the Defendants, Nix, because, unlike the debtor in Nix, Debtor, via the Complaint at issue, neither disputes Defendants' original note and mortgage nor seeks to invalidate Defendants' lien, nor does she raise any other claims arising out of the origination of the loan.  Rather, Debtor seeks damages for certain conduct of the Defendants, which occurred several years after closing and after the commencement of a state court foreclosure action, in connection with Defendants' refusal to complete a modification of Debtor's mortgage loan.

The Court also observes that neither of the two Chapter 13 cases relied upon in Nix for the adoption of its approach addressed reservation of rights language approved and required by the bankruptcy court as part of a court required form chapter 13 plan.  See In re Porter, 382 B.R. 29 (Bankr. D.Vt. 2008) (considering broad reservation of rights language *drafted by debtors* and included in a proposed chapter 13 plan); In re Hearn, 337 B.R. 603 (Bankr. E.D. Mich. 2006) (considering a reservation of rights clause *drafted by debtor* in a confirmed plan which specifically and expressly reserved debtor's rights to bring avoidance claims).  To the extent that Nix, Ginn, and Pressley stand for the proposition that confirmation of a Chapter 13 plan using the Court's approved form plan Reservation Language bars any and all pre-confirmation causes of action owned by a debtor, the undersigned respectfully disagrees and finds this approach too broad brushed.[9]  The preclusion of a debtor's causes of action related to any pre-confirmation conduct or event appears to be contradicted by the express provisions of the form plan.

The form plan required by this Court provides:

> **V. PROPERTY OF THE ESTATE, STATUS AND OBLIGATIONS OF THE DEBTOR AFTER CONFIRMATION:** ... Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor.

---

[9]    Nix and Pressley are unreported decisions.  While Ginn is reported, it does not appear to have been cited by other courts regarding the issue of the effectiveness of a reservation of rights provision.

The plain meaning of the Reservation Language appears to protect a debtor's pre-confirmation causes of action by not waiving or adversely affecting such rights, a reservation intended to benefit, as applicable, several parties, including the debtor, the trustee and other parties in interest.[10]  The plan also provides that "[c]onfirmation of this plan does not bar a party in interest from objecting to a claim" and that "the terms of the debtors pre-petition agreement with a secured creditor shall continue to apply except as modified by this plan, the order confirming the plan, or *other order of the Court*."  When viewed together, these provisions, by their plain language, preserve post-confirmation challenges to a creditor's claim and other assertions of rights based upon pre-confirmation conduct.  Any other interpretation would render the Court-required language meaningless and would further severely mislead debtors and trustees who rely on its plain meaning and validity.

By failing to object to the Reservation Language, no matter how general or specific, before confirmation, a creditor would itself be barred by *res judicata* from disputing its effectiveness. See In re Hearn, 337 B.R. at 615 (holding that a creditor was bound under § 1327 to a specific reservation of rights provision in the confirmed plan). A creditor or other party in interest that wishes to prevent a debtor from reserving pre-confirmation claims should timely raise an objection prior to confirmation for determination by the Court.  See In re Porter, 382 B.R. at 33 (sustaining creditor's pre-confirmation objection to broad reservation of rights language in the debtors' proposed plans). According to Espinosa, once confirmed, a plan, even with general reservation language, would be binding. 559 U.S. at 269.  In this case, Defendants, who are sophisticated creditors, were properly served and made an appearance in the case by

---

[10]  The Reservation Language in the form Chapter 13 plan was drafted and promulgated by this Court at the suggestion of a bar committee which included bar members representing both debtors and creditors and the chapter 13 trustees.

16

filing an objection to confirmation and filing a proof of claim, so no due process issue arises that would preclude the application of *res judicata* to bind Defendants to the Reservation Language. Furthermore, nothing in the plan at issue expressly precludes Debtor's actions so as to overcome the Reservation Language.[11]

To determine the effect of § 1327, the Court looks to the express provisions of the plan. The undersigned has agreed that the Reservation Language would not allow a debtor to contradict the specifically detailed treatment of a creditor's claim in a confirmed plan with which the Reservation Language is expressly inconsistent. For example, where the specific plan provisions identify and recognize a creditor by name, a debtor will be precluded from later denying that party's standing or existence as a creditor, as discussed in In re Burretto, C/A No. 05-07146-JW, slip op. at 3-4 (Bankr. D.S.C. Jul. 23, 2008), and In re Neals, 459 B.R. 612, 617 (Bankr. D.S.C. 2011). See also Richland-Lexington Airport Dist. v. American Airlines, Inc., 306 F.Supp.2d 548, 564 (D.S.C. 2002) ("Any inconsistency between a general clause and a specific clause [in a contract] must be resolved in favor of the specific.") It is reasonable to conclude, as the undersigned did in these cases,[12] that a debtor, who specifically identified a creditor in his or her sworn schedules and plan, and had a long history of making payments to the creditor specifically identified in the confirmed plan, should not, as a defense to his failure to perform under the plan, be allowed to suddenly challenge the legal standing of that party as a creditor. In those cases, the Court applied *res judicata* and § 1327 to bar the debtor from contesting a creditor's standing to seek relief from the automatic stay post confirmation. See also In re Jeter, C/A No. 08- 07872-HB, 2011 WL 601473 (Bankr. D.S.C. Dec. 1, 2011) (finding that the debtors

---

[11] No allegation of fraud or misrepresentation to the Court in connection with confirmation has been asserted.

[12] The Court notes that the effect of the reservation of rights language was not raised by the debtors in In re Neals, 459 B.R. at 617 or In re Burretto, C/A No. 05-07146-JW, slip op. at 3-4, although the plans in those cases contained similar reservation of rights language.

17

were barred by *res judicata* from asserting defenses in response to a creditor motion for relief from stay based upon any pre-confirmation defect in the transfer of the note to that creditor); In re Madera, 445 B.R. 509 (Bankr. D.S.C. 2011) (stating in ruling *at confirmation* that a debtor's action in paying a creditor without objection for a significant period of time recognizes that creditor as the proper party to receive payment and that debtor-drawn reservation of rights provision was unnecessary and served no useful purpose).

In Nix, Judge Burris indicated that the reservation of rights regarding causes of action must be specific or the language will have no effect. While specificity is the better rule, it is up to affected creditors, by timely objection, or the Court, *sua sponte*, to raise such concerns at or before confirmation. Whether a pre-confirmation claim or cause of action is barred by 11 U.S.C. § 1327 must be decided based on provisions of the confirmed plan and on a case-by-case basis by applying the elements of claim preclusion.  In this case, Debtor proceeded to confirmation utilizing a cure of default provision under 11 U.S.C. § 1322(b)(5) for Defendants' claim, but contemporaneously referred to prior mortgage modification efforts and her need for further consideration thereof.   The express language of that cure provision did not preclude an action for monetary damages regarding acts or failures to act by Defendants, which occurred subsequent to the loan closing, but prior to confirmation.[13]  The treatment of Defendants' claim under Debtor's plan is not directly inconsistent with the Reservation Language so as to preclude a lawsuit for pre-confirmation conduct related to the modification or a post-confirmation objection to claim. Furthermore, it was reasonable for Debtor to rely upon the Reservation Language.  Accordingly, Defendants' motion to dismiss on the grounds that Debtor's claims are precluded by the confirmation order is denied.

---

[13] Debtor made clear at the confirmation hearing her continuing desire and need for modification consideration—her desire was made so clear that the Court asked Defendants to provide additional information to Debtor regarding modification possibilities.

**V.**    *Res Judicata* **effect of a prior state court final order.**

Defendants further argue that *res judicata* bars Debtor's claims because the state court entered a final order granting Defendants' motion for summary judgment and dismissing Debtor's counterclaims in the state court foreclosure action. Debtor does not appear to dispute that the conduct at issue in the Complaint served as the basis for Debtor's counterclaims in the state court foreclosure action to which both Debtor and Defendants were parties.  However, she argues that *res judicata* should not apply because the state court judgment was rendered based upon facts deemed admitted due to Debtor's former attorney's failure to timely respond to Defendants' Requests for Admission pursuant to SCRCP 36.

*Res judicata* prohibits a party or its privies from raising any claims that were or could have been resolved in prior litigation. Brown v. Felsen, 99 S.Ct. 2205, 2209 (1979); First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996); Vieira v. Harris (In r JK Harris & Company, LLC), 512 B.R. 552, 557 (Bankr. D.S.C. 2012) ("Under the traditional rubric of res judicata, once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter.") (quoting In re Microsoft Corporation Anti–Trust Litigation, 355 F.3d 322, 325 (4th Cir.2004)).  "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown, 99 S.Ct. at 2209.  A party may claim *res judicata* by showing the following: (1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process, (2) the parties are identical, or in privity, in the two actions, and (3) the claims in the second matter are based upon the same cause of action

involved in the earlier proceeding.  In re Varat Enters., Inc., 81 F.3d at 1315 (also holding that *res judicata* applies to decisions of bankruptcy courts).  When all of the requirements for *res judicata* are satisfied, "the judgment in the first case acts as an absolute bar to the subsequent action with regard to every claim which was actually made … and those which might have been presented."  Id. at 1317 (citing In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 n.3 (11th Cir.), *cert denied*, 498 U.S. 959 (1990)).  Because *res judicata* provides a complete defense to re-litigating matters that have already been resolved, this doctrine "is not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and substantial justice, of public policy and private peace, which should be cordially regarded and enforced by the courts."  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (quoting Hart Steel Co. v. R.R. Supply Co., 244 U.S. 294, 299 (1917)).

The issue of whether an order granting summary judgment that is based upon facts deemed admitted under SCRCP 36 is a decision "on the merits" is one of first impression in this Court.  The South Carolina case law on this issue is sparse; however, courts considering Fed. R. Civ. P. 36, which is substantively similar to SCRCP 36, have held that a judgment based solely on deemed admissions cannot be a bar in a later proceeding under the express language of Rule 36, which provides that "[a]n admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding."  In the Matter of Cassidy, 892 F.2d 637, 640 (7th Cir. 1990) (holding that an admission made in Tax Court proceedings pursuant to Tax Court Rule 90(f) (equivalent of Fed. R. Civ. P. 36) was not binding in a subsequent bankruptcy proceeding); In re Fortner, No. 12-60478-CIV, 2012 WL 3613879, *5 n.5 (S.D.Fla. Aug. 21, 2012) (stating that an order deeming admissions admitted based upon a failure to deny or object is not an actual finding by the state trial court for collateral estoppel purposes)

(citing Fed.R.Civ. P. 36(b); Fla. R. Civ. P. 1.370(b); <u>Cassidy</u>, 892 F.2d at 640); <u>Cozzone v.</u>

<u>Ingui</u>, No. 06-1541, 2006 WL 3069465, at *2 (E.D. Penn. Oct. 25, 2006) ("The meaning of the

rules is clear; admissions shall not be used in a proceeding beyond the action for which they are

offered.  It necessarily follows that a verdict or judicial finding predicated exclusively on those

admissions is likewise inadmissible.").  Since a copy of the Order Granting Summary Judgment

was not provided for the Court's review, the Court is unable to determine whether the Order was

based solely upon the deemed admissions or whether additional evidence supported the summary

judgment determination.    Therefore, Defendants' motion to dismiss on the ground that the

Debtor's claims are barred by *res judicata* due to the entry of the state court's Order Granting

Summary Judgment is denied.

## VI.    Judicial Estoppel

Defendants argue that confirmation of Debtor's Chapter 13 plan also bars Debtor's

claims pursuant to the doctrine of judicial estoppel.  Judicial estoppel is "an equitable doctrine

that prevents a party who has successfully taken a position in one proceeding from taking the

opposite position in a subsequent proceeding," and "is recognized to protect the integrity of the

judicial system." <u>King v. Herbert J. Thomas Memorial Hosp.</u>, 159 F.3d 192 (4th Cir. 1998)

(citing <u>Lowery v. Stovall</u>, 92 F.3d 219, 223 (4th Cir. 1996)); <u>Hovis v. General Dynamics Corp.</u>

<u>(In re Hovis)</u>, 396 B.R. 895, 902 (D.S.C. 2007).  The elements for judicial estoppel are as

follows: "(1) the party to be estopped must be advancing an assertion that is inconsistent with a

position taken during previous litigation; (2) the position must be one of fact, rather than law or

legal theory; (3) the prior position must have been accepted by the court in the first proceeding;

and (4) the party to be estopped must have acted intentionally, not inadvertently." <u>Hovis</u>, 396

B.R. at 902 (citing <u>Havird Oil Co., Inc. v. Marathon Oil Co., Inc.</u>, 149 F.3d 283, 292 (4th Cir. 1998)).

Defendants rely on this Court's prior decision in <u>In re Brown</u>, where a debtor was estopped from arguing in opposition to a motion for relief from stay that she owned an interest in a vehicle where she had not listed an ownership interest in the vehicle and had not provided for treatment of the debt secured by the vehicle in a prior case.  <u>In re Brown</u>, No. 01-12506, 2002 Bankr. LEXIS 1698 (Bankr. D.S.C. Jun. 4, 2002). The Court found that the elements of judicial estoppel were met because the positions taken by the debtor in the first case and in the second case were polar opposites, the Court had adopted the debtor's position that she had no interest in the property by confirming a plan which provided no treatment related to the vehicle, and these inconsistent positions appeared to be taken to gain an unfair advantage by using the second filing to shield the vehicle from collection attempts and to delay the creditor.  <u>Id</u>. at *11.

Defendants argue that Debtor's claims are incompatible with the position taken by Debtor in her confirmed plan because she is now disputing Defendants' claims and the terms of the confirmed Plan.[14]  For the reasons discussed above regarding the binding effect of the confirmed plan, Debtor's position taken in her Complaint is not incompatible with her confirmed plan, since she expressly reserved the causes of action she owned against Defendants.  Therefore, judicial estoppel does not apply and Defendants' motion to dismiss on this ground is denied.

---

[14] Defendants further argue that the Claims are incompatible with Debtor's Schedules, because Debtor did not list any claims against Defendants and did not indicate that Defendants' claim was disputed.  However, Debtor filed an Amended Schedule D on August 18, 2014 to indicate that the debt owed to Defendants is disputed.  A debtor generally has the right to amend schedules as a matter of course at any time before a case is closed. <u>See</u> Fed. R. Bank. P. 1009(a).

**VII.    Equitable Estoppel**

Defendants further argue that confirmation of Debtor's Chapter 13 plan bars Debtor's claims pursuant to the doctrine of equitable estoppel, which "allows a person's act, conduct, or silence when it is his duty to speak to preclude him for asserting a right he otherwise would have had against another who relied on that voluntary action." In re Varat, 81 F.3d 1317 (citations omitted). The elements of equitable estoppel are as follows: "(1) the party estopped knew the relevant facts; (2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; (3) the party acting was ignorant of the true facts; and (4) the party acting relied on the conduct to its injury." Id. The Court finds that equitable estoppel does not apply in this case because the Reservation Language in the plan gave notice to Defendants that Debtor was not waiving her claims against them, and therefore Defendants did not have the right to rely on Debtor's failure to specifically identify or address those causes of action in the plan. Therefore, the Motion to Dismiss the Complaint on this ground is denied.

## <u>CONCLUSION</u>

For the foregoing reasons, it is ordered that Defendants' Motion is hereby **granted in part and denied in part:**

(1) Debtor's claims for violation of SCUPTA, Negligence, Specific Performance, and Promissory Estoppel are dismissed;

(2) Defendants' Motion to Dismiss the Breach of Contract Claim is denied; and

(3) Defendants' Motion to Dismiss on the grounds that Debtor's claims are barred by *res judicata*, § 1327(a), judicial estoppel and equitable estoppel is denied.

It is further ordered that Defendants shall file their responsive pleading to the remaining Breach

of Contract Claim within 14 days after the entry of this Order.

**AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**10/28/2014**



US Bankruptcy Judge
District of South Carolina

Entered: 10/28/2014